# Exhibit 2

*Vectren*

# CENTERPOINT ENERGY, INC.
## INVOLUNTARY SEVERANCE BENEFITS PLAN #616

### SUMMARY PLAN DESCRIPTION AND PLAN DOCUMENT

*Vectren*

## CENTERPOINT ENERGY, INC.
## INVOLUNTARY SEVERANCE BENEFITS PLAN #616

### SUMMARY PLAN DESCRIPTION AND PLAN DOCUMENT

1.  <u>Purpose of the Plan</u>

    The purposes of the CenterPoint Energy, Inc. Involuntary Severance Benefits Plan #616, which shall be effective as of the Effective Date through the second anniversary of the Effective Date (this "Plan") are:

    (a)   to make Severance Benefits available to certain eligible employees as described in the Merger Agreement that will financially assist with their transition following certain terminations of employment from CenterPoint Energy, Inc., its affiliates, subsidiaries or its successors while this Plan is in effect; and

    (b)   to resolve any possible claims arising out of employment, including termination, by providing such employees with Severance Benefits in return for a Waiver and Release from liability.

    This Plan represents an amendment and restatement of all prior severance plans, practices or policies (other than individual contracts providing for severance benefits) in effect with the Company or an Affiliate as of the effective time hereof with respect to Employees (as defined below), including the Vectren Severance Guidelines. All such prior severance plans, practices and policies, including the Vectren Severance Guidelines, are hereby superseded by this Plan, and discontinued and terminated with respect to Employees. This document constitutes both the formal Plan document and a summary of the Plan, called a summary plan description.

    This Plan is intended to be excepted from the definitions of "employee pension benefit plan" and "pension plan" set forth under Section 3(2) of ERISA and is intended to meet the descriptive requirements of a plan constituting a "severance pay plan" within the meaning of regulations published by the Secretary of Labor at Title 29, Code of Federal Regulations § 2510.3-2(b) and shall be administered and maintained as an unfunded welfare benefit plan under Section 3(1) of ERISA.

2.  <u>Definitions</u>

    As used in this Plan, the following terms shall have the following meanings (and the singular includes the plural, unless the context clearly indicates otherwise):

    **Affiliate**: Each corporation, partnership or other business entity which is 50% or more owned, directly or indirectly, by the Company.

    **Cause**: Termination from employment due to unacceptable performance, misconduct, gross negligence, dishonesty, acts detrimental or destructive to the Company or its Affiliates, employees or property, or any violation of the policies of the Company or its Affiliates.

*Vectren*

**COBRA**: The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended from time to time, currently embodied in Internal Revenue Code Section 4980B, which provides for continuation of group health plan coverage in certain circumstances.

**COBRA Rate**: The cost of continued coverage under COBRA, that currently being 102% of the full group rate (including the employee's share and the employer's share of the group coverage cost and a 2% administrative fee).

**Company**: CenterPoint Energy, Inc., a Texas corporation, and any successor to CenterPoint Energy, Inc.

**Comparable Employment**: Employment with the Company or any Affiliate for the same or comparable position that does not (a) reduce the sum of the Employee's Compensation and target incentive bonus by more than 10%; (b) result in an additional commute of more than 50 miles; or (c) result in a significant adverse change in reporting level or skill requirements, as determined by the Company in its sole discretion.

**Compensation**: The Employee's annual base salary or annualized base rate of pay as of his or her Termination Date.

**Disability**: Disability within the meaning of the Company's Long Term Disability Plan.

**Effective Date**: The "Closing Date," as such term is defined in the Merger Agreement.

**Eligible Employee**: An Employee described in Section 3(a).

**Employee**: Any person who, immediately prior to the Effective Date, (a) is an active, regular (not temporary), full-time or part-time employee of Vectren and (b) is not an officer of Vectren with an employment, change of control, severance or similar agreement (whether or not such agreement is triggered by the transactions contemplated by the Merger Agreement).

**ERISA**: The Employee Retirement Income Security Act of 1974, as amended.

**Merger Agreement**: The Agreement and Plan of Merger by and among Vectren Corporation, CenterPoint Energy, Inc. and Pacer Merger Sub, Inc., dated as of April 21, 2018.

**Notice**: A written notice provided to an Employee stating that the employment of the Employee will be terminated and the Employee is eligible for participation in this Plan.

**Notice Date**: The date on which an Employee receives a Notice.

**Participant**: An Eligible Employee who meets the requirements set forth in Section 3(b) of this Plan.

**Plan**: This CenterPoint Energy, Inc. Involuntary Severance Benefits Plan #616, effective as of the Effective Date through the second anniversary of the Effective Date.

*Vectren*

**Plan Administrator**:  The Senior Vice President and Chief Human Resources Officer of CenterPoint Energy, Inc.

**Restrictive Covenant**:   A confidentiality, non-disclosure, non-competition, non-solicitation, non-disparagement or other covenant or obligation similar to or of the same nature as the foregoing set forth under any Company or Affiliate plan, program or policy or an agreement between the Company, or an Affiliate, and the Employee.

**Service**:  The Participant's service recognized by the Company or an Affiliate through the Termination Date, as reflected in the records of the Company or Affiliate and determined by the Plan Administrator.

**Severance Benefits**:   Benefits described in Sections 5, 6(a)(i), and 6(a)(ii) below, as applicable.

**Severance Period**:  The period of time, following the Participant's Termination Date, equal to the total number of weeks of Weekly Compensation payable under Section 5(a) hereof.

**STI Plan**:  If the Termination Date is on or within 10 days after the Effective Date, the Vectren Incentive Plan Guidelines; otherwise, the CenterPoint Energy, Inc. Short Term Incentive Plan, as in effect from time to time, or any similar successor plan adopted by the Company.

**Termination Date**:  The last day on which an Employee is carried on the payroll of the Company or an Affiliate as an employee (excluding any period during which such Employee receives Severance Benefits) and has a "separation from service" within the meaning of Section 409A of the Internal Revenue Code.

**Vectren**:  Vectren Corporation, Vectren Utility Holdings, Inc., and subsidiaries of Vectren Utility Holdings, Inc.

**Vectren Severance Guidelines**: The Severance Benefits Guidelines, dated June 2014, adopted by Vectren with respect to its employees, as in effect immediately prior to the Effective Date.

**Waiver and Release**: The legal document in which an Employee, in exchange for Severance Benefits under this Plan, among other things, releases the Company and all of the Affiliates, their directors, officers, employees and agents, their employee benefit plans, and the fiduciaries and agents of said plans from liability and damages in any way related to the Employee's employment with or separation from employment with the Company or any of its Affiliates.

**Weekly Compensation**:  The Employee's Compensation divided by 52.

*Vectren*

3.    <u>Participation</u>

    (a)    Eligible Employees

An Employee shall be eligible to become a Participant in this Plan and receive Severance Benefits only if the Employee is designated by the Company as eligible to participate in the Plan and the Employee's employment with the Company and all Affiliates is terminated by the Employee's employer for reasons other than death, Disability or Cause during the period commencing on the Effective Date and ending on the second anniversary of the Effective Date.  Employees who meet the requirements in the preceding sentence are referred to as "Eligible Employees" and shall receive a Notice regarding their employment termination, which shall advise them of their scheduled Termination Date.

Each Employee who receives a Notice shall be given a form of Waiver and Release and a listing of the job titles and ages of all individuals eligible or selected to become Participants and the ages and job titles of all individuals in the same job classification or organizational unit who are not eligible or selected to become Participants.

    (b)    Participants

In order to become a Participant, an Eligible Employee must meet the following requirements:  (a) by 5:30 p.m. on the later of the 45th day following the date that the Employee receives the Waiver and Release and attached OWBPA disclosure pursuant to Section 3(a) or the day after the Employee's Termination Date (but no earlier than the day after the Employee's Termination Date), the Employee must execute (and return to the Plan Administrator or the person designated by the Plan Administrator) the Waiver and Release; (b) the Employee must not revoke his or her Waiver and Release within 7 days (15 days for an Employee in Minnesota) after signing it; and (c) the Employee must not be disqualified from receiving Severance Benefits pursuant to the provisions of Section 4 below.  **Each Eligible Employee is hereby advised to consult an attorney before signing a Waiver and Release.**

4.    <u>Disqualifying Events</u>

*NO* Severance Benefits will be paid to an Eligible Employee who otherwise qualifies as a Participant if:

    (a)    the Employee voluntarily terminates employment prior to the Termination Date scheduled in his or her Notice or fails to continue to perform the duties of his or her employment through that scheduled Termination Date;

    (b)    this Plan (i) is amended in a way that makes the Employee ineligible or (ii) is terminated before the Employee's Termination Date;

*Vectren*

(c)    the Employee fails to return all property and materials of his or her employer to his or her supervisor or other appropriate employer representative as of his or her Termination Date;

(d)    On or prior to the Employee's Termination Date, the Employee is offered Comparable Employment and declines the offer; or

(e)    the Employee accepts any offer of employment with the Company or an Affiliate on or before his or her Termination Date.

5.    <u>Cash Severance Benefit</u>

(a)    An Eligible Employee who qualifies as a Participant under Section 3 shall be entitled to a lump-sum cash Severance Benefit in an amount equal to (i) one week of the Participant's Weekly Compensation for each year of Service credited to the Participant plus (ii) one week of the Participant's Weekly Compensation for each $5,000 of the Participant's Compensation, provided that such cash Severance Benefit shall not be less than 4 weeks of Weekly Compensation nor more than 26 weeks of Weekly Compensation.

(b)    An Eligible Employee who qualifies as a Participant under Section 3 shall also be entitled to an additional lump-sum cash Severance Benefit in an amount equal to a prorated amount of such Participant's target award under the STI Plan for the performance year in which the Participant's Termination Date occurs, if any. Such prorated amount shall be determined: (i) if the STI Plan is the Vectren Incentive Plan, based on the number of days worked in the performance year through the Termination Date or (ii) if the STI Plan is the CenterPoint Energy, Inc. Short Term Incentive Plan or a similar successor plan, based upon the Participant's eligible earnings while a participant under the STI Plan for the performance year through the Participant's Termination Date. In any event, notwithstanding the foregoing, the amount determined under this Section 5(b) shall be reduced by any amount otherwise payable to the Participant under the STI Plan for such performance year except as otherwise provided under the Merger Agreement.

(c)    An Eligible Employee who qualifies as a Participant under Section 3 shall also be entitled to an additional lump-sum cash Severance Benefit in an amount equal to the Participant's Weekly Compensation multiplied by the number of weeks remaining following the Termination Date through the second anniversary of the Effective Date.

(d)    An Eligible Employee who qualifies as a Participant under Section 3 shall also be entitled to an additional lump-sum cash Severance Benefit in an amount equal to the Participant's medical and dental premiums, calculated using the level of coverage held by the Participant on the Termination Date and the applicable COBRA rate, for the Severance Period.

*Vectren*

(e)     An Eligible Employee who qualifies as a Participant under Section 3 shall also be entitled to an additional lump-sum cash Severance Benefit in an amount equal to the Participant's premiums, at the applicable COBRA rate, for the Employee Assistance Program for the Severance Period.

(f)     An Eligible Employee who qualifies as a Participant under Section 3 shall also be entitled to an additional lump-sum cash Severance Benefit in an amount equal to the cost of outplacement services for the Severance Period, as determined by the Company.

(g)     Notwithstanding the foregoing, the cash Severance Benefit calculated pursuant to Sections 5(a), (b), (c), (d), (e), and (f) for a Participant shall be reduced by the amount of any cash compensation payable to the Participant by the Company or its Affiliates on account of the termination of the Participant's employment, pursuant to (x) a written employment or change in control agreement with the Company or its Affiliates, (y) another severance plan or program of the Company or its Affiliates, or (z) any other obligation, whether by contract, applicable law, or otherwise of the Company or any other individual or entity to provide a payment to such Participant in the event of an involuntary termination of such Participant's employment with the Company and its Affiliates.

(h)     Notwithstanding the foregoing, the amount of any lump-sum cash Severance Benefit otherwise payable to a Participant shall be reduced by any monies owed by the Participant to the Company (or an Affiliate), including, but not limited to, any overpayments made to the Participant by the Company (or an Affiliate) and the balance of any loan by the Company (or an Affiliate) to the Participant that is outstanding at the time that the cash Severance Benefit is paid.

6.     <u>Continuation of Other Benefits</u>

(a)     <u>Participants</u>

In addition to the cash Severance Benefit described in Section 5, a Participant shall be entitled to the following benefits:

(i)     <u>Medical/Dental/Vision Plan Benefits</u>

For the longer of (1) the period following the Participant's Termination Date through the second anniversary of the Effective Date and (2) the applicable period required by COBRA, a Participant shall be entitled to continue the medical, dental and vision plan coverage in effect for active employees during such period if the Participant is eligible for and timely elects continuation of such coverage in accordance with COBRA. The Participant shall pay the active employee rate with respect to coverage during the period following the Participant's Termination Date through the second anniversary of the Effective Date and thereafter the full COBRA rate to the extent the Participant is entitled to continue coverage beyond such period under COBRA. Such benefits shall be governed by and

*Vectren*

subject to (i) the terms and conditions of the plan documents providing such benefits, including the reservation of the right to amend or terminate such benefits under those plan documents at any time, and (ii) the provisions of COBRA. The period of coverage provided under this section shall constitute continuation coverage required by COBRA.

(ii)  <u>Tuition Reimbursement</u>

If the Participant was participating in the Vectren or Company Tuition Reimbursement Program on the Participant's Termination Date, the Participant shall continue to be eligible for reimbursement under such program with respect to any courses in which the Participant was enrolled on the Participant's Termination Date, subject to the terms and conditions of such program as then in effect.

(iii)  <u>Other Benefit Plans or Programs</u>

A Participant's participation in all other employee benefit plans and/or programs at the Company and the Affiliates shall cease following his or her Termination Date unless otherwise provided under the plan or program, subject to the terms and conditions of the governing documents of those employee benefit plans and/or programs.

(b)  <u>Ineligible Employees</u>

An Employee who does not satisfy all the requirements of Section 3 shall be entitled to no benefits under this Plan. Any such Employee shall, however, be entitled to receive those benefits, following his or her Termination Date, to which he or she is otherwise entitled under the provisions of any other employee benefit program in which such Employee is a member on his or her Termination Date.

7.  <u>Confidential and Proprietary Business Information & Nonsolicitation Obligations</u>

Notwithstanding any provision of this Plan to the contrary, an Employee's entitlement to the benefits provided for under this Plan shall be fully subject to the provisions of the Waiver and Release regarding confidential and proprietary business information and non-solicitation, and the Company and the Affiliates shall be entitled to take all actions specified in the Waiver and Release with respect to an Employee who fails to comply with those provisions.

Nothing in this Plan, however, limits or precludes an eligible Employee participant from making a good faith voluntary report, charge, complaint, or claim to, or providing truthful testimony and documents as required by law or under oath pursuant to a subpoena, court order, or request by the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other federal, state, or local government agency or commission ("Government Agencies"). Potential Employee participants further understand that this Plan does not limit their ability to communicate with any

*Vectren*

Government Agencies or otherwise participate in any investigation or proceeding that may be conducted by any Government Agency, including providing documents or other information to the Government Agency, without notice to the Company.

8.   <u>Participant Representations and Affirmations</u>

The Participant must represent and affirm that he or she (i) has not filed any claims or complaints against the Company and, to the extent permissible by law, will not do so; (ii) will abide by any post-employment Restrictive Covenants he or she is subject to; (iii) is knowingly and voluntarily entering into a Waiver and Release with the Company; and (iv) has been paid all compensation owed to Participant, except any Severance Benefits provided for pursuant to this Plan.

9.   <u>Unemployment; Taxes</u>

Payments under this Plan will not be reduced because of any unemployment benefits an Employee may be eligible to receive under applicable federal or state unemployment laws. Any required income tax withholding and FICA (Social Security) taxes shall be deducted from any benefit paid under this Plan.

10.   <u>When the Severance Benefits Will be Paid</u>

Within 60 days following the date that a Participant returns an executed Waiver and Release (without having timely revoked it), and in no event later than the end of the year following the year of the Termination Date, the Participant's cash Severance Benefit described in Section 5 will be paid to the Participant in a single lump sum and outplacement services described in Section 6(a)(ii) will commence; provided, however, to the extent the Participant's cash Severance Benefit exceeds the maximum amount described in Treasury Regulation § 1.409A-1(b)(9)(iii)(A), such excess amount shall be paid no later than March 15th of the year following the year of the Termination Date. If the Participant previously enrolled with the Company to receive payment of wages by direct deposit, then payment of the Participant's cash Severance Benefit will be made by direct deposit into the same bank account and financial institution that the Participant previously enrolled with the Company. Participants receiving Severance Benefits shall not be considered employees of the Company or any Affiliate for any purpose after their Termination Dates, nor shall any Severance Benefits be considered for purposes of computing benefits under or making contributions to any employee benefit plan maintained by the Company or any Affiliate.

If a Participant dies after his or her Termination Date and after executing the Waiver and Release (without having timely revoked it) but before receiving his or her cash Severance Benefit, any cash Severance Benefit will instead be paid (a) to the Participant's beneficiary (or beneficiaries) designated under the Company's Life Insurance Plan covering the Participant on his or her Termination Date, if such beneficiary is living, or if none is so designated or living, (b) to the executor of the Participant's estate, in a lump sum as soon as practicable after the date of death.

*Vectren*

Payments of other benefits described in Section 6 will be in accordance with the provisions of the governing plan documents and the applicable policies of the Company and the Affiliates.

11.    Non-Assignment of Severance Benefits

No benefit under this Plan shall be subject to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, voluntary or involuntary, by operation of law or otherwise, and any attempt at such a transaction shall be void. Also, no benefit under this Plan shall be liable for or subject to the debts, contracts, liabilities, engagements or torts of the person entitled to it. Notwithstanding the foregoing, the amount of any cash Severance Benefit otherwise due to a Participant shall be reduced by any monies owed by the Participant to the Company (or an Affiliate) as provided in Section 5 hereof.

12.    Plan Amendment and Termination

The Company may at any time amend or terminate this Plan, provided that the benefits under this Plan payable to a Participant who has returned (and has not thereafter revoked) a signed Waiver and Release and has otherwise met all of the requirements for Severance Benefits hereunder (other than the expiration of the Waiver and Release revocation period) before this Plan is amended or terminated shall not be adversely affected. Any amendment or termination shall be set out in an instrument in writing and executed by an appropriate officer of the Company.

13.    Making A Claim

How to Submit a Claim

If benefits due under this Plan have not been provided within the time frame specified in Section 10, a Participant or his or her authorized and designated representative (collectively, the "Applicant") must request those benefits in writing from the Plan Administrator. Such application shall set forth the nature of the claim and any other information that the Plan Administrator may reasonably request. The Plan Administrator shall notify the Applicant of the benefits determination within a reasonable time after receipt of the claim, such time not to exceed 90 days unless special circumstances require an extension of time for processing the claim. If such an extension is required, written notice of the extension shall be furnished to the Applicant prior to the end of the initial 90-day period. In no event shall such an extension exceed a period of 90 days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time, and the date by which a final decision is expected to be rendered.

Notice of a claim denial, in whole or in part, shall be set forth in a written or electronic notice in a manner calculated to be understood by the applicant and shall contain the following:

(a)    the specific reason or reasons for the denial; and

(b)     specific reference to the pertinent Plan provisions on which the denial is based; and

(c)     a description of any additional material or information necessary for the Applicant to perfect the claim and an explanation of why such material or information is necessary; and

(d)     an explanation of the Plan's claims review procedure, the time limits applicable to such procedures, and a statement of the Participant's rights following an adverse benefit determination on review, including a statement of an Applicant's right to file a lawsuit under ERISA if the claim is denied on appeal.

An Applicant shall be given timely written notice of the time limits set forth herein for determinations on claims, appeal of claim denial and decisions on appeal.

Claims Review Procedure

If a written claim results in a claim denial, either in whole or in part, the Applicant has the right to appeal.  The appeal must be in writing.  The administrative process for appealing a claim is as follows:

Upon receipt of a claim denial, an Applicant may send a written request, including any additional information supporting the claim, for reconsideration to the Plan Administrator at the following address within 60 days of receiving notification that the claim is denied:

> Attn: Lynne Harkel-Rumford
> CenterPoint Energy, Inc.
> 1111 Louisiana
> Houston, TX 77002

Upon review, the Plan Administrator will consider all comments, documents, records, and other information submitted by the Participant related to the claim without regard to whether such information was submitted or considered in the initial benefit determination.

The Plan Administrator shall render a decision within a reasonable time after receipt of the request for review, such time not to exceed 60 days unless special circumstances require an extension of time for processing the claim.  If such an extension is required, written notice of the extension shall be furnished to the Applicant prior to the end of the initial 60-day period.  In no event shall such an extension exceed a period of 60 days from the end of the initial period.  The extension notice shall indicate the special circumstances requiring an extension of time, and the date by which a final decision is expected to be rendered.

The Plan Administrator will provide written or electronic notice of its final determination.  If the claim is denied in whole or part, such notice, which shall be written or electronic in a manner calculated to be understood by the Applicant, will include:

*Vectren*

(a)     the specific reason(s) for the denial; and

(b)     the specific provision(s) of the Plan on which the denial is based; and

(c)     a statement that the Applicant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits (as described above); and

(d)     a statement describing any voluntary appeal procedures offered by the Plan and the Applicant's right to obtain further information about any such procedures; and

(e)     a statement of the Applicant's right to file a lawsuit under ERISA.

An appeal will not be considered if it is not filed within the applicable period of time.

At any stage in the appeals process, the Applicant may review and obtain copies of documents, including this Plan document, records, and other information relating to the Applicant's entitlement to such benefit, and submit issues, comments, and records relating to the claim in writing.

<u>The Participant Must File a Claim Under the Plan's Claims Procedure</u>

No action at law or in equity shall be brought to recover benefits under this Plan prior to the date the Applicant has exhausted the administrative process of appeal available under this Section of the Plan.   Benefits under this Plan will only be paid if the Plan Administrator decides, in its discretion, that an Applicant is entitled to them.

No action at law or in equity may be brought more than 12 months following the date an Applicant's claim is denied, or deemed denied, on appeal.

14.     <u>Section 409A</u>

The Severance Benefits paid or made available under this Plan are intended to be exempt from Section 409A of the Internal Revenue Code, and this Plan shall be construed and interpreted and operated consistent with such intent.   All reimbursements and in-kind benefits provided pursuant to this Plan shall be made in accordance with Treasury Regulation § 1.409A-3(i)(1)(iv), to the extent applicable, such that any reimbursements or in-kind benefits will be deemed payable at a specified time or on a fixed schedule relative to a permissible payment event.   Specifically, (i) the amounts reimbursed and in-kind benefits provided under this Plan, other than total reimbursements that are limited by a lifetime maximum under a group health plan, during the Participant's taxable year may not affect the amounts reimbursed or in-kind benefits provided in any other taxable year, (ii) the reimbursement of an eligible expense shall be made on or before the last day of Participant's taxable year following the taxable year in which the expense was incurred, and (iii) the right to reimbursement or an in-kind benefit is not subject to liquidation or exchange for another benefit.

*Vectren*

15.  <u>Employee Rights</u>

As a participant in this Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA).  ERISA provides that all plan participants under ERISA plans shall be entitled to:

**Receive Information About Your Plan and Benefits**

Examine, without charge, at the Plan Administrator's office and at other specified locations, such as worksites and union halls, all documents governing the Plan, including (when applicable) insurance contracts and collective bargaining agreements, and a copy of the latest annual report (Form 5500 Series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the Plan Administrator, copies of documents governing the operation of the Plan, including (when applicable) insurance contracts and collective bargaining agreements, and copies of the latest annual report (Form 5500 Series) and updated summary plan description.  The Plan Administrator may make a reasonable charge for the copies.

Receive a summary of the Plan's annual financial report.  The Plan Administrator is required by law to furnish each Participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan.  The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants and beneficiaries.  No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a Plan benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a Plan benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights.  For instance, if you request a copy of Plan documents or the latest annual report from the Plan Administrator and do not receive them within 30 days, you may file suit in a Federal court.  In such a case, the court may require the Plan Administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator.  If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or Federal court.  In addition, if you disagree with this Plan's decision

or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in Federal court. If it should happen that Plan fiduciaries misuse this Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a Federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your Plan, you should contact the Plan Administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the Plan Administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210. You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

16.  Plan Document Controls

In the event of any inconsistency between this Plan document and any other communication regarding this Plan, this Plan document controls.

17.  Controlling Law

This Plan is an employee welfare benefit plan under ERISA. This Plan and the Waiver and Release shall be interpreted under ERISA and the laws of the State of Texas, without reference to any conflicts of law principles thereof that would require the application of the laws of another jurisdiction, to the extent that state law is applicable.

18.  General Information

Plan Sponsor: CenterPoint Energy, Inc. P.O. Box 4567, Houston, Texas 77210; (713) 207-3000.

Employer Identification Number of Plan Sponsor: 74-0694415.

Plan Number: 616.

Plan Year: The plan year for reporting to governmental agencies and employees shall be the calendar year.

Plan Administrator: Senior Vice President and Chief Human Resources Officer, CenterPoint Energy, Inc., 1111 Louisiana, Houston, Texas 77002; (713) 207-7567.

*Vectren*

The Plan Administrator is responsible for the operation and administration of this Plan. The Plan Administrator is authorized to construe and interpret this Plan, and its decisions shall be final and binding.  The Plan Administrator shall make all reports and disclosures required by law.

<u>Agent for Service of Legal Process</u>:  Vice President of Litigation, CenterPoint Energy, Inc., 1111 Louisiana, Houston, Texas 77002, is the agent for service of legal process.

<u>Service of Process may also be made upon the Plan Administrator.</u>

<u>Plan Duration</u>:   Effective Date through the second anniversary of the Effective Date.

<u>Source of Benefits</u>:  Payments due under this Plan shall be made by the Company or an Affiliate designated by the Company from the paying employer's general assets.


IN WITNESS WHEREOF, CenterPoint Energy, Inc. has executed these presents as evidenced by the signature of its officer affixed hereto, in a number of copies, all of which shall constitute but one and the same instrument, which may be sufficiently evidenced by any executed copy hereof, this ___14th___ day of ___January___, 2019.

**CENTERPOINT ENERGY, INC.**


By_____
　　　Susan B. Ortenstone
　　　Senior Vice President and Chief Human
　　　Resources Officer

-14-