**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**EVANSVILLE DIVISION**

| | | |
|---|---|---|
| ANDREW J. FRESON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 3:19–cv-75-MPB-RLY |
| | ) | |
| CENTERPOINT ENERGY INC., | ) | |
| a Texas Corporation | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VECTREN CORPORATION, | ) | |
| an INDIANA CORPORATION and | ) | |
| WHOLLY OWNED SUBSIDIARY OF | ) | |
| CENTERPOINT ENERGY, INC. | ) | |
| | ) | |
| Defendants. | ) | |

**FIRST MEMORANDUM OF PLAINTIFF**
**ANDREW J. FRESON IN OPPOSITION**
**TO DEFENDANTS CENTERPOINT ENERGY, INC. AND**
**VECTREN CORPORATIONS' MOTION TO DISMISS PLAINTIFF**
**ANDREW J. FRESON'S AMENDED COMPLAINT AND**
**MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR MOTION**

Plaintiff Andrew J. Freson in response to Defendant's CenterPoint Energy, Inc., and Vectren Corporation's Motion To Dismiss Plaintiff Andrew J. Freson's Amended Complaint and Memorandum Of Defendants In Support Of Their Motion, moves the Court through counsel to deny said Motion and in support of said request submits this Memorandum.

**I.  INTRODUCTION**

On April 9, 2019, Andrew J. Freson ("Plaintiff", "Andrew" or "Freson"), filed  Third Party Beneficiary Complaint For Damages Under Contract.  With leave of Court, on

January 31, 2020, Freson filed Amended Complaint (Document 36).  At the filing of the Complaint (Docket No. 1), Plaintiff was ill advised regarding his state citizenship.  As Plaintiff investigated the issue of subject matter jurisdiction it became clear that as of March 4, 2019, Plaintiff became a citizen of Missouri and he has now been so advised.  To correct the facts concerning subject matter jurisdiction the Amended Complaint (Document 36) was prepared.  In addition to amending as to the state of citizenship, two (2) other Counts were added.

At the time of filing of Plaintiff's Complaint (Document No. 1), Plaintiff believed that Vectren Corporation, as a wholly owned subsidiary of Center Point Energy Inc., was fully controlled by Center Point Energy, Inc.  At the time of filing the original Complaint Vectren was a newly merged company.  Prior to February 1, 2019, the wholly owned subsidiary Pacer Merger Sub., Inc., (hereinafter "Merger Sub" or "Vectren"), had no assets, no operation or location other than that of Center Point Energy, Inc.  After the original Vectren  was merged into Pacer Merger Sub, Inc., the company was renamed Vectren and the same control appeared (the new Vectren being an alter ego of Center Point Energy Inc.)  The organization charts, issues raised regarding employees and later identified ERISA Plan #616 supported this appearance.  Only discovery could develop the precise facts concerning the fact that Vectren is a mere conduit for the transaction of business by Center Point Energy, Inc.  At the time of merger employees were advised of their status and assignments by officers of Center Point Energy, Inc.  It is now believed that the Court has diversity jurisdiction based upon both the relationship of operation of Center Point Energy, Inc., and Vectren Corporation, and also upon the facts alleged in

the Amended Complaint concerning Plaintiff's citizenship. (Document No. 36 paragraph 1).

Paragraph 1 of Count I in the Amended Complaint (Document 36) states facts supporting Plaintiff's citizenship in the state of Missouri as of March 4, 2019. The filing of this case by way of Complaint occurred April 9, 2019, (Document 1). Citizenship depends on domicile, the state in which a person intends to live over the long run. Heinen v. Northrup, 671 F.D. 669, 670 (7th Cir. 2012). Plaintiff in paragraph 1 in Count 1 of the Amended Complaint recites the facts in support of the proposition that as of March 4, 2019, Plaintiff intended to live in Missouri over the long run by working there, purchasing a home there, allowing his children to move there after completing the school year and by continuing to work there and live there. Counsel for Plaintiff has a duty to fully advise the client as to citizenship and correct prior ill advice so that pleading recites the true facts and accurately advises the Court as to subject matter jurisdiction. Id.

Concerning ERISA jurisdiction paragraph 15 of Count I of the Amended Complaint states that ERISA interpretation of the ERISA plan of Vectren prior to merger may be necessary; however, this is a peripheral issue. In Count III the issue is whether the Center Point plan #616 is a valid plan as to Plaintiff and if so whether it was fraudulently adopted.

In both Count II and III of the Amended Complaint Plaintiff states the false statements, or representations made by or on behalf of the defendant by identifying the person making each statement and by indicating when made and cites the acts of Defendants upon which Plaintiff relied and the falseness of the statements.

## II. **STATEMENT OF FACTS**

### A. **Background**

Andrew J. Freson, (hereinafter "Andrew") was born in Evansville, Indiana, on October 31, 1977. He graduated from Harrison High School in Evansville, Indiana, in May, 1995. In May 1999, he graduated from the University of Evansville with a Bachelor of Science Degree in Computer Science. Later, in May, 2001, he received a Master Of Business Administration Degree from the University of Southern Indiana. After receiving his Bachelor Of Science Degree, and his Masters Degree, Andrew engaged in training and studies relating to his work with Merger Agreement party Vectren Corporation (hereinafter "VectrenPre"). He received various certifications, as follows:

1. Project Management Institute

   a. Project Management Professional Certification - June 2003;
   b. Agile Certified Practitioner (PMI-ACP) - February 2016.

2. Scrum Alliance

   a. Certified Scrum Professional (CSP) - May 2015;
   b. Certified Agile Leader (CAL) - December 2018;
   c. Certified Scrum Master (CSM) & Certified Product Owner (CSPO) - January, 2015.

3. ICAgile

   a. Certified Professional Agile Coaching & Certified Professional Agile Team Facilitation - January 2016.

4. Villanova University

   a. Master Certificate in Applied Project Management (early 2003);
   b. Certificate in Mastering Project Management (early 2003).

      c.  Certificate in Fundamentals of Project Management (early 2003).

   5.  Six Sigma Institute

      a.  Six Sigma Green Belt Certification.

   6.  The LeSS Company

      a.  Certified LeSS Practitioner - August 2015.

Andrew is married and his wife was born in Southwestern Indiana and graduated from the University Of Evansville with a Bachelor Of Arts Degree in 2000.  He is the father of two (2) sons born in Evansville, Indiana.

**B.  Employment**

From June 1997 until May 1999 Andrew was employed as a Senior Consultant at Pinnacle Computer Services.  While Andrew was still attending the University of Evansville he received an employment offer from VectrenPre and began working for VectrenPre in May, 1999.  He continued his employment with VectrenPre until the merger in 2019.  During said employment Andrew enjoyed the following employment progression:

• Manager, DevOps (February 2017 - February 2019)

• Manager, Portfolio Management office and Release Management (April 2012 - February 2017)

• Manager Enterprise Resource Planning Systems (October 2007 - April 2012)

• Manager, Program Management Office (November 2004 - October 2007)

• Project Manager (May 1999 - November 2004)

During the most recent years of VectrenPre employment Andrew was aware that the

company was for sale.  He was involved in various meetings and planning sessions concerning the sale of VectrenPre.  In particular, and most recently, he was involved concerning the Agreement And Plan Of Merger entered into by and among VectrenPre, CenterPoint and Merger Sub.  A true and correct copy of the Agreement And Plan Merger dated April 21, 2018, was attached to the Complaint and Amended Complaint as Exhibit 1.  A copy of this Agreement And Plan Of Merger was also attached to the Memorandum Of Defendants CenterPoint and Vectren in support of their Memorandum In Support Of Motion To Dismiss Plaintiff's Amended Complaint as Exhibit 1 (Document 37-3).  During the merger process, Andrew served on the transition committee traveling to Houston, Texas, at least every three (3) weeks to help the merger principals in bringing the Merger Plan to a successful completion.

**C.  Intent**

Copies of the Merger Plan by and among VectrenPre, CenterPoint and  MergerSub dated April 21, 2018 were widely distributed and readily available to VectrenPre employees, VectrenPre shareholders, and to news media for Southwestern Indiana for all to see and review. A copy is attached to Plaintiff's Amended Complaint as Exhibit 1. Of particular note to the employees, shareholders and news media were the provisions of Section 6.10 entitled Employee Matters of the Merger Plan which is fully set out on pages A-43 through A-45 of Exhibit 1 to Plaintiff's Amended Complaint.  Copies of pages A-43 through A-45.  Said provision of the Section 6.10 Employee Matters is also set out at pages 3 and 4 of the Memorandum Of Defendants.  VectrenPre with CenterPoint also conducted various sessions with employees and provided handouts, and

documents, including, but not limited to, a document dated April 23, 2018, consisting of ten (10) pages and entitled The Next Chapter For Our Company Begins Today-Vectren and CenterPoint Energy, Inc., Announce Combination of Companies as authored by Carl Chapman, Chairman, President and CEO of VectrenPre, a true and accurate copy of which was marked Exhibit 3 and attached to the Plaintiff's Amended Complaint. Of particular note is page 10 of said document which is entitled What About You?

Also, a document dated July 16, 2018, and entitled Merger Proposed - Your Vote Is Very Important signed by Carl Chapman, Chairman, President and Chief Executive Officer of VectrenPre which was a Notice Of Special Meeting Of Shareholders, consisting of eighty two (82) pages, was distributed to VectrenPre Shareholders. It is noted that attached to the Notice To Shareholders was a copy of the Merger Plan dated April 21, 2018, which is marked as Exhibit 1 and attached to the Amended Complaint as filed herein. Of particular note in the Notice Of Special Meeting Of Shareholders are pages 22, 29, 65 and 66.

Vectren also distributed to employees a series of questions and answers, dated April 30, 2019, and April 23, 2019, a true and accurate copy of which is attached to the Amended Complaint and marked Exhibit 7. Of particular note is Question 5 labeled Employee-Related Questions and the answer.

### D. Andrew Employee Responsibilities

On or about 4:45 p.m. on February 1, 2019, Andrew was notified by Vectren Corp. email that the merger was closed. Also, as part of said email, Andrew was notified that leaders would connect with him the next week to discuss with him his role,

responsibilities and reporting relationship.

On or about February 6, 2019, Andrew was verbally notified by VP Technology Operations, Shachella James of his new role and responsibilities.  No written charts, diagrams, or assignment outlines were provided.  Andrew was able to obtain a chart at a later time of his immediate responsibilities a true and accurate copy of which is attached to the Amended Complaint and marked Exhibit 8.  This chart is consistent with the verbal information related to him on February 6, 2019.  Prior to February 1, 2019, various VectrenPre IT Organization charts existed which are attached to the Amended Complaint marked Exhibits 9, 10, and 11.

On February 1, 2019, and thereafter on February 6, 2019, Andrew's educated guess was that any role he would have with the merged company would not be of "same or better responsibilities". Andrew was also aware that Section 6.10 of the Agreement Of Plan Of Merger contained the language "unless such Company Employee consents to such change".  Also at page 29 of the Notice To Shareholders appeared the following: "CenterPoint Energy agrees to provide each Company employee ... the same or better employment responsibilities ... unless such change in responsibilities ... consented to by the Company employee".

In light of the foregoing Andrew had a prepared letter declining any assignment that was not of "the same or better responsibilities".  Andrew's intent was to clearly document the fact that he did not consent to such an assignment.

When Andrew was provided, only verbally, his new assignment, he immediately recognized as is obvious by review of Exhibits 8, 9, 10, and 11, such assignment was not

of "equal or better employment responsibilities".  Andrew tendered to Shachella James

his letter dated February 6, 2019, a true and accurate copy of which is attached to the

Amended Complaint, and marked Exhibit 2, to witness the fact, among other things, that

he did not consent to the new assignment.

On February 6, 2019, Shachella James asked Andrew to withdraw letter Exhibit 2 and

talk with Gary Hayes, SVP & CIO,  the next day.  Andrew called Chris Harlow, Director

of Human Resources, after the conversation with Shachella James and was informed by

Chris Harlow that if he did not accept the offer and position that he would be terminated.

On February 7, 2019, Andrew spoke with Gary Hayes about the offered position.

Andrew informed Gary Hayes that the offered position was not of "the same or better

employment responsibilities" and provided him the letter Complaint Exhibit 2.  Gary

Hayes inquired as to scheduling of Andrew's last day of Vectren employment.  At that

time Andrew believed that he was terminated and entitled to Merger Plan termination

benefits.

**E.  Jurisdiction**

Diversity is the basis for subject matter jurisdiction. The originally filed complaint

(Document 1) preparation began in February 2019 while Andrew was an Indiana

resident.  The complaint was not amended to reflect the change in citizenship.  The

jurisdiction was originally based on Plaintiff Andrew Freson being an Indiana resident

which was based on ill advice at the time of filing the original complaint and Vectren

being  a wholly owned subsidiary of Center Point with an alter ego relationship.  Based

upon experience from April 21, 2018, until filing and thereafter Pacer Merger Sub, Inc.,

(now Vectren) was totally controlled by Center Point with an alter ego relationship.

Upon further research and development of subject matter jurisdiction the following facts as set out in the Amended Complaint were determined:

1.  Plaintiff, Andrew J. Freson, (hereinafter referred to as "Freson") is and was a resident, citizen and domiciled in the State of Missouri on and after  March 4, 2019, based on the following facts:

   a.  Until March 4, 2019, he lived for at least the past seven (7) years residing at 5253 Heatheridge Drive, Newburgh, Indiana 47630, in Warrick County; and

   b.  On March 4, 2019, he began working in St. Louis, Missouri, and rented and occupied an apartment in Clayton, Missouri, both in St. Louis County; and

   c.  On June 26, 2019, he and his wife completed purchase of a home at 656 Langton Drive, Clayton, Missouri 63105; and

   d.  On July 25, 2019, all of his and his wife's personal belongings were loaded on a  moving van at Newburgh, Indiana; and

   e.   On July 27, 2019, all of said belongings were unloaded into 656 Langton Drive,  Clayton, Missouri 63105, where they presently live and are domiciled.

   f.  On or about March 23, 2019, Andrew and his wife entered into a contract to purchase a home under construction at 656 Langton Drive, Clayton Missouri 63105.

2. Defendant, CenterPoint Energy, Inc., (hereinafter referred to as "CenterPoint") is a Texas corporation with its principal place of business at Houston, Texas, in Harris County, with a mailing address of 1111 Louisiana Street, Houston, Texas 77002.

3. Defendant, Vectren Corporation, (hereinafter referred to as "Vectren") is an Indiana corporation with its principal place of business at Evansville, Indiana, in Vanderburgh County, with a mailing address of One Vectren Square, 211 North Riverside Drive, Evansville, Indiana 47708, and has the following history:

    a.  Is a wholly owned subsidiary of CenterPoint;

    b.  Was created as a wholly owned subsidiary of CenterPoint under the name Pacer Merger Sub, Inc., an Indiana corporation (hereinafter referred to as ("Merger Sub");

    c.  Took the name of Vectren Corporation on the Effective Time of a merger described hereinafter.

    d.  Pacer merger Sub, Inc., was without assets, business operation, location other than Center Point and completely controlled by Center Point.

## F.  Merger History

1.  On or about April 21, 2018, an Agreement And Plan Of Merger (hereinafter referred to as "Merger Plan"), was entered into by and among CenterPoint, Merger Sub and Vectren Corporation, (hereinafter referred to as "VectrenPre"), an Indiana corporation with its principal place of business at Evansville, Indiana, Vanderburgh County, a true and accurate copy of said contract is marked Exhibit 1, attached to the

Amended Complaint.

2.  The originals of Exhibit 1 to Complaint are in the exclusive possession and control of the parties to the contract which is referred to as " Merger Plan".

3. Plaintiff, Freson, was employed continuously by VectrenPre from May 1999 to the Effective Time as defined in the Merger Plan at Article I, Section, 1.02, on page A-2 and alleged by the Defendants, and each of them, to be February 1, 2019.

4.  After the Effective Time of the Plan, Plaintiff, Freson, continued his employment and availability to perform employment until he received indications verbally, of his employment responsibilities.

5. On or about February 6, and February 7, 2019, the merger resulting company Vectren, through its management, informed Freson of his new employment responsibilities which were not "the same or better" than his employment responsibilities existing immediately prior to the Effective Time.

6.  Plaintiff, Freson, did not consent to the new employment responsibilities.  In fact he immediately handed and mailed to CenterPoint and Vectren representatives, his letter dated February 6, 2019, a true and accurate copy of which is marked "Exhibit 2", to Amended Complaint.

7.  On or about April, 2018, Plaintiff, Freson, was provided by VectrenPre and CenterPoint a document consisting of twelve (12) pages, a true and correct copy of which is marked "Exhibit 3", to Complaint.

8.  Plaintiff, Freson, requested all severance benefits as described in Exhibits 1 and 3, which  request was repeatedly refused and continues to be denied  and unpaid.

Page 12 of  36

9.  Plaintiff, Freson, is now entitled to twenty-four (24) months base salary equal  to approximately Two Hundred Seventy Thousand Dollars ( $270,000.00)   benefit premiums for twenty four (24) months equal to not less than Forty Thousand Dollars ($40,000.00) Dollars, VectrenPre severance benefits equal to approximately Eighty Thousand Dollars ($80,000.00).

10.  Defendants, and each of them, unconditionally consented and submitted in the Merger Plan at Article IX, Section 9.1 on page A-55 to jurisdiction and venue in the U.S. District Court for the Southern District of Indiana.

11.  Plaintiff has suffered the loss of use of the funds to which he is entitled and has been entitled since on or about February 6, and February 7, 2019.

12.  As stated in Count 1, of the Amended Complaint,  pleading paragraph 12., Andrew J. Freson is entitled to Vectren Pre severance benefits.  The  determination of these benefits may require interpretation of an ERISA EMPLOYEE RETIREMENT INCOME   SECURITY   ACT   (ERISA)   PLAN,   although   this   is   a   peripheral determination to the issues related to Count I.

13.  Defendants CenterPoint Energy, Inc., and Vectren Corporation, by its pre merger companies VectrenPre and Merger Sub, and each of them, made representations to VectrenPre employees, including Freson, and VectrenPre shareholders, including Freson, as contained in the Merger Plan, Exhibit 1, to Amended Complaint and more specifically in Section 6.10 Employee Matters of the Plan at Pages A-43 to A-45.

14. The Merger Plan was dated April 21, 2018 and signed by Carl L. Chapman, Chairman, President and Chief Executive Office on behalf of VectrenPre, by Scott M.

Prochazka, President and Chief Executive Officer on behalf of CenterPoint, and by Scott

M. Prochazka, President and Chief Executive Officer on behalf of Merger Sub.

15. The Plan was immediately distributed to Plaintiff and other similarly situated employees and to Southwestern Indiana news media for distribution and broadcast.

16. Notice to VectrenPre shareholders, including Freson, was formally transmitted on or about July 17, 2019, as signed by Carl L. Chapman, VectrenPre, Chairman, President and CEO.

17. At page 29 of said Notice appeared the following provisions:

*Impact of the Merger on Employees.*  The Board evaluated the expected impact of the merger on our employees and considered that the merger agreement provides that for a period of two years following the effective time, CenterPoint Energy agrees to provide each Company employee (excluding union employees) with certain protections, including (1) the same or better employment responsibilities in the same location or within 50 miles of the same location as held by the Company employee immediately prior to the effective time of the merger, unless such change in responsibilities or location is consented by the Company employee, (2) a base salary or wage rate and short-term incentive compensation target opportunities that are no less favorable, in the aggregate, than that provided to the Company employee immediately prior to the effective time of the merger and (3) employee benefits that are substantially comparable, in the aggregate, to those provided to the Company employee immediately prior to the to the effective time of the merger. CenterPoint Energy retained the right to terminate Company employees at any time, but if a Company employee's employment is terminated without "cause" or

for "good reason" within two years following the effective time, as more fully described in the section entitled "The Merger Agreement--Employee Matters", CenterPoint Energy must provide certain severance benefits to such terminated Company employees. Said notice also had attached the Merger Plan, Exhibit 1 to Amended Complaint.

18. VectrenPre with CenterPoint also conducted various sessions with employees and provided handouts, and documents, including, but not limited to, a document dated April 23, 2018, consisting of ten (10) pages and entitled The Next Chapter For Our Company Begins Today-Vectren and CenterPoint Energy, Inc., Announce Combination of Companies as authored by Carl Chapman, Chairman, President and CEO of Vectren-Pre, a true and accurate copy of which was marked Exhibit 3 and attached to the Plaintiff's Amended Complaint. Of particular note is page 10 of said document which is entitled What About You?

19. Also, a document dated July 16, 2018, and entitled Merger Proposed - Your Vote Is Very Important signed by Carl Chapman, Chairman, President and Chief Executive Officer of VectrenPre which was a Notice Of Special Meeting Of Shareholders, consisting of eighty two (82) pages, was distributed to VectrenPre Shareholders. It is noted that attached to the Notice To Shareholders was a copy of the Merger Plan dated April 21, 2018. Of particular note in the Notice Of Special Meeting Of Shareholders are pages 22, 29, 65 and 66 which four pages are attached to the Amended Complaint as Exhibit 6.

20. VectrenPre also distributed to employees a series of questions and answers, dated April 30, 2019, and April 23, 2019, a true and accurate copy of which are attached to the

Amended Complaint as Exhibit 7.  Of particular note is Question 5 labeled Employee-Related Questions and the answer.

21. On or about 4:45 p.m. on February 1, 2019, Freson was notified by Vectren Corp. email that the merger was closed.  Also, as part of said email, Freson was notified that leaders would connect with him the next week to discuss with him his role, responsibilities and reporting relationship.

22. On or about February 6, 2019, Freson was verbally notified by VP Technology Operations, Shachella James, of his new role and responsibilities.  No written charts, diagrams, or assignment outlines were provided.  Freson was able to obtain a chart at a later time of his immediate responsibilities, a true and accurate copy of which is attached to the Amended Complaint as Exhibit 8.  This chart is consistent with the verbal information related to him on February 6, 2019.  Prior to February 1, 2019, various VectrenPre IT Organization charts existed which are attached to the Amended Complaint as Exhibit 9, Exhibit 10, and Exhibit 11.

23. When Freson was provided, only verbally, his new assignment, he immediately recognized as is obvious by review of Exhibits 8, 9, 10, and 11, to the  Amended Complaint such assignment was not of "equal or better employment responsibilities".  Freson tendered to Shachella James his letter dated February 6, 2019, a true and accurate copy of which is attached to the Complaint and Amended Complaint as Exhibit 2, to witness the fact, among other things, that he did not consent to the new assignment.

24. On February 6, 2019, Shachella James asked Freson to withdraw letter Exhibit 2 and talk with Gary Hayes, SVP & CIO, the next day.  Freson called Chris Harlow, Director

of Human Resources, after the conversation with Shachella James and was informed by

Chris Harlow that if he did not accept the offer and position that he would be terminated.

25. On February 7, 2019, Freson spoke with Gary Hayes about the offered position. Freson

informed Gary Hayes that the offered position was not of "the same or better employment

responsibilities" and provided him the letter Amended Complaint Exhibit 2.  Gary Hayes

inquired as to scheduling of Freson's last day of Vectren employment.  At that time

Freson believed that he was terminated and entitled to Merger Plan termination benefits.

26. Those persons making the representation stated herein were acting within their

authority as representatives of the defendants and each of them.

27. The representations so made to the Plaintiff Freson were false as indicated herein.

28. The representations so made were false and known to be false by the defendants and

each of them, with the intent to deceive and defraud the Plaintiff Freson to induce him

to continue employment with VectrenPre and not seek  equal or better responsibilities

with another employer prior to merger completion.

29. At the time such representations and statements were made Plaintiff Freson believed

the representations and statements were true and relied on them to his detriment and

damage.

30. As a result of such false and fraudulent representation Plaintiff was damaged in an

amount exceeding Three Hundred Ninety Thousand Dollars (390,000.00).

31. At page A-51 of Merger Plan Exhibit 1 to Amended Complaint at Section 8.03

Amendment of the Merger Plan is stated "This Agreement may not be amended except

by an instrument in writing signed on behalf of each of th Parties".  There also appear

other provisions limiting the right to amend.

Defendant CenterPoint Energy Inc., claims to have adopted  Plan #616 by a document dated January 14, 2019, a copy of which is attached to the Amended Complaint as Exhibit 12.  The Plan #616 appears to be a document signed only by an officer of CenterPoint Energy, Inc., and does not indicate what authority said officer had to sign this document or how it was adopted.

32.  Defendant, CenterPoint Energy, Inc., claims to have adopted an ERISA PLAN that It named CenterPoint Energy, Inc., Involuntary Severance Benefits Plan #616 (Plan #616).  Defendant, CenterPoint Energy, Inc., alleges and claims that said Plan #616 terminated Vectren's Severance Guidelines as referenced at Count 1 paragraph 12 of this Complaint and that terminates Section 6.10(a) of the Agreement And Plan Of Merger, Exhibit 1 hereto.

33. Plan #616 although dated January 14, 2019, was not made available to employees of VectrenPre, was dated prior to the completion of the merger and only after the letters dated February 6, 2019, and February 8, 2019,  tendered by and on behalf of Freson was the Plan #616 existence made known to Freson.

34. Defendant, CenterPoint Energy, Inc., initiated an ERISA proceeding as to Plaintiff Freson, to which proceeding Plaintiff objected but participated with objection so that any and all administrative proceedings would be exhausted.  Plan #616 administrator treated the February 6, 2019, letter from Freson to CenterPoint and Vectren attached to the Plaintiff's Complaints, Exhibit 2, as a claim by letter dated April 14, 2019, for benefits under Plan #616.  Plan #616 administrator denied said claim and Andrew appealed denial

of this initial claim decision by letter dated May 14, 2019.  Since that date the Plan Administrator has denied the appeal by letter dated June 8, 2019, and all administrative remedies are now exhausted concerning CenterPoint's claim that the letter of February 6, 2019, was directed to said Plan #616.

35. Said Plan #616 is fraudulent as to Freson in that it substantially changes the representations extended to Freson, and similarly placed employees, in the Merger Plan Exhibit 1 and the Vectren Severance Guidelines in existence from April 21, 2018 to January 31, 2019, which Freson relied on.  These specifically include, but are not limited to, the following:

    a.   The Merger Plan shall be governed  by and construed in accordance with the laws of the State of Indiana (4-21-18 Merger Plan page A55 Amended Complaint Exhibit 1).

    b.   All claims arising from the Merger Agreement shall be raised to and exclusively determined by the U.S. District Court for the Southern District of Indiana (4-21-18 Merger Plan page A55 Amended Complaint Exhibit 1).

    c.   Each employee shall be provided with the same or better employment responsibilities (4-21-18 Merger Plan page A43 Amended Complaint Exhibit 1), (7-16-18 Notice To Shareholders Exhibit 6 pages 29 and 65).

    d.   If an employee is offered a position of lesser responsibility, employee may elect not to take that position and instead choose termination (4-23-18 Next Chapter Exhibit 3), (4-23 and 4-30-18 Exhibit 7 Frequently Asked Questions No. 5).

e.  And will be paid salary and health benefits for two years and Vectren severance benefits (4-21-18 Merger Plan page A55 Amended Complaint Exhibit 1), (4-21-18 Merger Plan page A43 Amended Complaint Exhibit 1), (7-16-18 Notice To Shareholders Exhibit 6 pages 22, 29 and 65), (4-23 and 4-30, 2018, Frequently Asked Questions Exhibit 5 Question 5), (4-23-2018, Next Chapter Exhibit 3) all Exhibits to the proposed Amended Complaint.

The following differences are noted in Plan #616 that are in direct conflict with the above representations::

f.  At page 2 under the definition Comparable Employment the purported plan makes the basis for securing of benefits comparable employment as determined by CenterPoint in its sole  discretion.

g.  Under paragraph 3A at page 4 the plan indicates that an employee is  eligible only if the employee is designated by the company.  And further  indicates that  each eligible employee will receive a Notice of Eligibility.

h.  Other provisions are included in the plan that disqualify an employee from benefits. (Paragraph 4 page 4, paragraph 7 page 7, paragraph 8 page 8, paragraph 12 page 9) are examples of such provisions.

i.  At paragraph 13, page 9 is set out a claim procedure that contains limits on claim filing and when, where and how filed.

j.  At paragraph 15 page 12 the plan recognizes a fiduciary responsibility and duties as to employees.

k.  At paragraph 16, page 13, the plan sets out that inconsistencies between the

plan and any other communication regarding this plan, will be controlled by the plan documents.

l.   At paragraph 17, page 13 the plan sets out the controlling law as the law of the State of Texas.

36. Those persons taking action relating to the ERISA Plan #616 were acting by and on behalf of the defendants and each of them.

37. Those taking the above action on behalf of defendants and each of them knew or should have known of the conflicts between the defendants' and each of them, prior agreements and representations and the provisions of Plan #616.

38. Plaintiff Freson relied on the prior fraudulent representations of the defendants and each of them and now is further damaged by the fraudulent acts of defendants and each of them relating to Plan #616.

39. As a result of such fraud Plaintiff Freson was damaged in a sum exceeding Three Hundred Ninety Thousand Dollars ($390,000.00). There are many other provisions in the plan that are in contradiction to the provisions of the Merger Plan and the parties stated intent as to the Merger Plan.

**G.  CenterPoint Energy, Inc. Involuntary Severance Benefits Plan Number 616.**

At page A-51 of Merger Plan at Section 8.03 Amendment of the Merger Plan is stated "This Agreement may not be amended except by an instrument in writing signed on behalf of each of the Parties". There also appear other provisions limiting the right to amend.

CenterPoint Energy Inc., claims to have adopted Plan # 616 by a document dated January 14, 2019, a copy of which is attached to Defendants' Memo (Document No. 37-5) and

marked Exhibit 3.   Defendants' Memo (Document 37-1) paragraph II. B. claims the Plan

was adopted January 19, 2019.  The Plan # 616 appears to be a document signed only by an

officer of CenterPoint Energy, Inc., and does not indicate what authority said officer had to

sign this document or how it was adopted.  Per Defendants' Memo, Plan #616 administrator

treated the February 6, 2019,  letter from Andrew to CenterPoint and Vectren attached to the

Plaintiff's Amended Complaint, Exhibit 2, as a claim by letter dated April 14, 2019, for

benefits under Plan #616.  Plan #616 Administrator denied said claim and Andrew appealed

denial of this initial claim decision by letter dated May 14, 2019.  Since that date the Plan

Administrator has denied the appeal by letter dated June 8, 2019, and all administrative

remedies are now exhausted concerning CenterPoint's claim that the letter of February 6,

2019, was directed to said Plan.  It is noted that the Plan #616 although dated January 14,

2019, was not made available to employees of VectrenPre, was dated prior to the completion

of the merger and only after the letters dated February 6, and February 8, tendered by and on

behalf of Andrew was the Plan #616 existence made known to Andrew.

## III.  LAW

### A.  Jurisdiction

Pursuant to United States Code 28 § 1332 (a) (28 USCS 1332 (a) The United States

District Court has original jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000.00 exclusive of interest and cost and is between citizens

of different states.  A corporation shall be deemed to be a citizen of every state by which it

has been incorporated and of the state where is has its principal place of business (28 USCS

1332  ( c ) (1).

Complaint alleging diversity as sole basis must allege as to each corporation both the state of incorporations and the state of principal place of business.  Rush Presbyterian St. Luke's Medical Center v. Safeco Ins. Co.  825 F2d 1204, 1205 (Ca7 Ill 1987).

**B.  Motion To Dismiss**

**1.  Third Party Beneficiary**

Those not a **party** to a contract may enforce the contract if they show that they are **third party beneficiaries.** R. R. Donnelley & Sons Co. v. N. Texas Steel Co., 752 N.E. 2d 112, 122 (Ind. Ct. App. 2001).   St. Paul Fire & Marine Inc. Co. V. Pearson Constr. Co., 547 N.E. 2d  853, 856 (Ind. Ct. App. 1989), trans denied.  A **third party beneficiary** contract exists when (1) the **parties** intend to benefit a **third party;** (2) the contract imposes a duty on one of the **parties** in favor of the **third party**; and (3) the performance of the terms of the contract render a direct benefit to the **third party** intended by the **parties** to the contract. Id.  The intent of the **parties** to benefit the **third party** is the controlling factor and this may be shown by naming the **third party** or by other evidence.  Id. Garco Industrial Equipment Co. V. Mallory  485 N.E. 2d 652,654 (In. App. 1995), City of Chicago v. E Chi, Second Century Inc.  878 NE 2d 358, 374 (In. App. 2007).

An entity that is not a party to a contract may enforce the provisions of the contract by demonstrating that it is a third party beneficiary thereto.  Alexander v. Linkmeyer Dev. II  LLC 119 N.E. 3d 603, 613. (In. App 2019).  Third party beneficiaries must show:

1.  Clear intent by actual parties to the contract to benefit third party.

2.  Duty imposed on one of the contracting parties in favor of the third party.

3.  Performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.  Id. @ 613.

It appears that the intent of the contracting parties would benefit the third party is of controlling importance as to the above mentioned three factors.  One who is not a party to a contract may enforce the contract by demonstrating he is a third party beneficiary.  City of E. Chicago v. E. Chi. Second Century, Inc.  878 N.E. 2d 358, 373  (In. App. 2007).

**2.  Ambiguity**

a.  In Federal Common Law ambiguities  in contract are construed against the drafter of the contract.  Phillips v. Lincoln National Life Ins. Co.  978 F. 2d 302. (7th Cir. 1992).

b.  In contract law the intention of the parties controls regarding substance of agreements.  Kovatch Mobile Equipment Corp. V. Warren Township 831 F. Supp. 665, 669 (Southern Dist. In. 1993).  A contract is unambiguous if reasonable people would find the contract subject to only one interpretation. Id. @670.  In an ambiguous contract there is apparent conflict between or among the provisions.  Id.  If a contract is ambiguous or uncertain and its meaning is to be determined by extrinsic evidence, its construction is a matter for the fact finder, Id. and therefore in such instance summary judgment is not available.  Id.

The goal of contract interpretation is to ascertain and enforce the parties' intent as manifested

in the contract.  Such a determination is generally a question of the law.  Zimmer US, Inc. v. Keefer

2012 U.S. Dist. Lexis 151878, 16 (Northern District of Indiana 2012).  The Court construes a

contract as a whole and considers all the provisions, not just individual words, phrases or paragraphs

Id. @17.  Ambiguity exists where a provision is susceptible to more than one interpretation and

reasonable persons would differ as to its meaning.  Id.

      The interpretation of a contract is a question of law.  Alexander v. Linkmeyer Dev. II LLC,

119 NE 3d 603 612 (In. App 2019).  A contract is reviewed de novo if trial court cannot determine

that the contract is not ambiguous or ambiguity can be determined without the aid of a factual

determination.  Id. 612.

      Courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity,

instead contracts must be construed to give effect to every word or phrase as far as is practicable.

Sistemas Automotrices De Mex, S.A. De C.V. v. Meritor Heavy Vehicle Sys., LLC (Northern

District IL 2015).

      In ascertaining parties intent the language should be construed so as not to render any words,

phrases or terms ineffective or meaningless.  Alexander v. Linkmeyer Dev II LLC 119 NE 3d 603,

612.  (Ind. App. 2019), When the terms of a contract are ambiguous or uncertain, its interpretation

requires extrinsic evidence and is left to the fact finder.  Id..  A contract is ambiguous if reasonable

people would disagree as to the meaning of its terms.  An ambiguity is construed against the drafter.

Id..

### C.  Summary Judgment

      Summary Judgment shall be granted if the designated evidence shows that there is no

genuine issues as to a material fact and the moving party is entitled to judgment and as a

matter of law.  <u>R.R. Donnelley & Sons Co., v. N. Texas Steel Co.</u> 752 NE 2d 112,121, (Ind. App. 2001).  <u>Clark v. CSX Transpu</u>. (737 NE 2d 752, 757) (Ind. Ct. App. 2000)<u>.</u>

   Once the moving party has sustained its initial burden of showing the absence of a genuine issue and the appropriateness of judgment as a matter of law, the party opposing summary judgment must respond by designating specific facts showing a genuine issue for trial. Id.

   Any doubts as to fact or inference shall be drawn from evidence in favor of the party opposing the motion.  Id.

**D.  Exhaustion of Remedies**

   In the case of <u>Orth v. Wis. State Emples. Union Council 24</u>, 546 F.3d 868, 874, (7th Circuit 2008) the ERISA plan was modified without notice to employee the Court stated that the plan breaches its fiduciary duty by changing the plan without notice to those affected by the change. Failure to provide notice of modification also violated 29 USCS §1024 (b) (1).

**E.  Contract Modification**

   One party to a contract cannot unilaterally make changes to a contract.

<u>City of E. Chicago v. E. Chi. Second Centery, Inc.</u> 878 N.E. 2d 358, 373.

**F.  Citizenship**

   Residence may or may not demonstrate citizenship which depends on domicile — that is to say, the state in which a person intends to live over the long run.  **Heinen v. Northrup** Gruman Corp., 671 F. 3d 669, 670 (7th Cir. 2012).  The Court directed Northrup to amend the jurisdictional allegations, a step that can be taken even while a case is on appeal.  Id. Lawyers have a professional obligation to analyze subject – matter jurisdiction before judges

need to question the allegations.  Id.

**G.  Alter Ego**

When dealing with related corporations such as parent and subsidiary the principal place of business test must be applied to the entity that is the relevant party (unless a party shows one is merely the alter ego of another).  **Bond v. Veloia Water Indianapolis, LLC,** 571 F. Supp. 2d 905, 913 (U.S. Dist. Ct. Southern District of Indiana 2008).

**H.  No ERISA Preemption**

If the connection between a state law claim and the benefit plan is too tenuous, remote, or peripheral ERISA'S preemption provision may not apply.  **Sharp Elecs. Corp. V. Metro Life Ins. Co.** 578 F. 3d 505, 514, (7th Cir. 2009).

If claim could have been brought under **ERISA** and there is no other legal duty cause of action is preempted.  **Francisean Skemp Health Care, Inc. V. Cent. States Joint Board Health & Welfare Trust Fund**, 538 F.3d 594, 596 7th Cir. 2008).  **Aetna Health Inc. V. Davila** 542 U.S. 200, 2007 (2004). Although the **ERISA** Plan was the subject of contract nothing in contract depended on the content of the Plan; therefore, not sufficiently related to them within the scope of **ERISA'S** preemption field.  **Sharp Id.**

**IV.  Argument**

The U.S. District Court has jurisdiction based on diversity of citizenship and the amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).    As the Plaintiff's original Complaint was filed diversity is based on Vectren (previously known as Pacer Merger Sub. Inc) being totally controlled by Center Point and subject of alter ego relationship.  **Heimen v. Northrup** Grumman Corp. 671 F. 3d 669, 670 (7th Cir. 2012),

**Kukic v. Aurora Loan Servs.,** 588 F. 3d 420, 427 (7th Cir. 2009).

In the Amended Complaint Plaintiff demonstrates that beginning March 4, 2019, he was a citizen of the State of Missouri.  Therefore complete diversity exists without the complicated fact analysis of the relationship between Vectren and Center Point.

Defendants seem to ignore the basic contract dispute of the parties.  Plaintiff contends that he is a third party beneficiary of the Merger Agreement based on ambiguity and the resolution based on the parties intent.

The Defendants  request that the Complaint be dismissed because it fails to state a claim upon which suit could be brought by Andrew.  The Plaintiff has alleged that he is a Third Party Beneficiary to the Merger Plan of April 21, 2018.  The Defendants deny that the Plaintiff is a Third Party Beneficiary; however, they set forth at page 3 of their  Motion (Document 37) labeled  II. Statement Of Facts, a provision being §6.10 Employee Matters, from the  Merger Plan.  This Merger Plan  is set out as Exhibit 1 to the and its provisions labeled §6.10 Employee Matters is also set out as part of Exhibit 1 thereto.

As can be seen from the Motion of Defendants the Merger Plan has conflicting provisions.  The Merger Plan sets out the statement as to Third Party Beneficiaries and also sets out the provisions titled Employee Matters.  These conflicting provisions present an ambiguity in the contract.  Clearly, to interpret a contract each and every provision should be considered and included in any determination.  If there exists an ambiguity it is then for the fact finder and/or the Court to consider the intent of the parties from the document and extraneous facts, if necessary, to determine the parties' intent.  At least one of the parties to the Merger Plan provided a Notice To Shareholders that described the intent of the parties,

making no mention as to lack of Third Party Beneficiaries. The Notice To Shareholders contained information relating to benefits promised to employees at pages 22, 29, 65 and 66 (Document 36 Exhibit 6). A copy of the Merger Plan was attached to the Notice To Shareholders. The facts contained herein demonstrate communications that were made to the employees describing how the Merger Plan would be implemented and its intent as to the employees.

A copy of one such communication dated April 23, 2018, a copy of which is attached as Exhibit 3 to the Amended Complaint at page 10 makes representations as to employee benefits consistent with §6.10 Employee Matters of the Merger Plan. Of particular note is the promise that if employee is offered a position of lesser responsibilities the employee may choose termination and receive benefits pursuant to the Merger Plan.

Also CenterPoint Energy, Inc./Vectren Merger - Frequently Asked Questions a copy of which is attached as Exhibit 5 to Amended Complaint bearing dates of April 23 and April 30, 2018, is quite informative as to the Merger Plan intent as to employee benefits. At Employee-Related Questions 5. What kind of job security do I have? is discussed briefly if an employee is offered a position of lesser responsibility. This is precisely what occurred as to Andrew. The employee may elect not to take that position and instead choose termination. The employee would be paid their salary and employer premiums for health care for twenty four (24) months and also Vectren Severance Benefits.

With all of these viewed together the intent of the parties is clear that each employee, including Andrew, is intended as a Third Party Beneficiary pursuant to the provisions contained in the Merger Plan.

The post merger communication to Andrew of his new role and responsibility from Shachella James is reflected on Exhibit 8 to the Amended Complaint..  Andrew was to manage a team consisting of nine (9) other employees.

As reflected on Exhibit 9 IT Organization - November, 2018, Andrew managed Dev Ops and SCA with net planned employees numbering fifty one (51) and staffed positions numbering forty (40) and seven (7) more open budget positions.  There were numerous teams managed by Andrew including those reflected in Exhibit 9.  It is noted that Andrew was at the organization level of director.

As reflected on Exhibit 10 to the proposed Amended Complaint IT Organization-Transitional State-2017 Andrew is reflected at a director level with substantially greater responsibilities than reflected on Exhibit 8.  As reflected on Exhibit 11 to the Amended Complaint IT Organization - September, 2016, Andrew is manager of Portfolio Management Office and Release Management.  Six (6) separate teams and managers with approximately twenty six (26) employees are reflected reporting to Andrew.

No reasonable argument can be advanced that on February 6, 2019, and February 7 2019, Andrew was offered a position of the same or better employment responsibilities as existed prior to that time.  For some uncomprehensible reason Vectren was trying to avoid affording to Andrew the promised benefits and benefits extended to many other employees.  Maybe Vectren recognized this caliber employee, wanted to maintain his services, but had no employment position available after the merger of the same or better employment responsibilities.

Next, the Defendants speak of a Severance Plan signed by one (1) employee of

CenterPoint alleging to be an ERISA Plan covering employees such as Andrew. It is noted that this document was dated January 14, 2019, long after all of the other documents going to the intent of the parties were dated and distributed to employees and others. The Defendants overlooked the fact that this severance document is an attempt to amend the provisions contained in the Merger Plan. The Merger Plan specifies that any amendments must be agreed upon by all parties not just one (1) of the parties. Further, the Severance Plan amends important details of the provisions relating to employees.

The employees received the following representations:

1. The Merger Plan shall be governed by and construed in accordance with the laws of the State of Indiana (4-21-18 Merger Plan page A55 Amended Complaint Exhibit 1).

2. All claims arising from the Merger Plan shall be raised to and exclusively determined by the U.S. District Court for the Southern District of Indiana (4-21-18 Merger Plan page A55 Amended Complaint Exhibit 1).

3. Each employee shall be provided with the same or better employment responsibilities (4-21-18 Merger Plan page A43 Amended Complaint Exhibit 1), (7-16-18 Notice To Shareholders Amended Complaint Exhibit 4 pages 29 and 65).

4. If an employee is offered a position of lesser responsibility, employee may elect not to take that position and instead choose termination (4-23, 18 Next Chapter Amended Complaint Exhibit 3), (4-23 and 4-30-18 Amended Complaint Exhibit 5 Frequently Asked Questions No. 5).

5. And will be paid salary and health benefits for two years and Vectren severance benefits (4-21-18 Merger Plan page A55 Amended Complaint Exhibit 1), (4-21-18 Merger Plan page A43 Amended Complaint Exhibit 1), (7-16-18 Notice To Shareholders Amended Complaint Exhibit 4 pages 22, 29 and 65), (4-23 and 4-30, 2018, Frequently Asked Questions Amended Complaint Exhibit 5 Question 5), (4-23-2018, Next Chapter Amended Complaint Exhibit 3).

CenterPoint Energy Inc. represents that it adopted an involuntary Severance Benefits Plan No. 616 dated January 14, 2019, (Document 37-5).  In the provisions which are listed under paragraph 1 (a) at page 1 the represented purpose is to make severance benefits available to certain eligible employees as described in the Merger Agreement.  At paragraph 1 (b) page 1 an additional purpose is represented as resolving any possible claims arising out of employment including termination.  Further, under paragraph 1 it is represented that this plan represents an amendment and restatement of all prior Severance Plans, practices or policies.


The following differences are noted that are in direct violation of the provisions of the Merger Plan:

1. At page 2 under the definition Comparable Employment the purported plan makes the basis for securing of benefits comparable employment as determined by CenterPoint in its sole  discretion.

2. Under paragraph 3A at page 4 the plan indicates that an employee is eligible only if the employee is designated by the company.  And further indicates that  each eligible employee will receive a Notice of Eligibility.

3. Other provisions are included in the plan that disqualify an employee from benefits. (Paragraph 4 page 4, paragraph 7 page 7, paragraph 8 page 8, paragraph 12 page 9) are examples of such provisions.

4. At paragraph 13, page 9 is set out a claim procedure that contains limits on claim filing and when, where and how filed.

5. At paragraph 15 page 12 the plan recognizes a fiduciary responsibility and duties as to employees.

6. At paragraph 16, page 13, the plan sets out that inconsistencies between the plan and any other communication regarding this plan, will be controlled by the plan documents.

7. At paragraph 17, page 13 the plan sets out the controlling law as the law of the State of Texas.

There are many other provisions in the plan that are in contradiction to the provisions of the Merger Plan and the parties stated intent as to the Merger Plan.

It is clear that this is an improper method of amending the Merger Plan.  Further, this document dated January 14, 2019, was never disclosed to Andrew and only after his letter of February 6, 2019, was tendered to Vectren, did CenterPoint disclose the existence of this Severance Plan.  The letter that CenterPoint Energy, Inc. chooses to interpret as a claim under the Severance Plan clearly is an attempt to claim Third Party Beneficiary benefits under the  Merger Plan. If Andrew had not objected to his assignment, the Defendants could have argued that he consented pursuant to the provision of the Merger Plan.  The documents distributed showing the intent of the parties clearly address this issue.  In particular page 10

of Exhibit 3 to Amended Complaint, provides as follows:

> "If an employee is offered a position of lesser responsibilities ... the employee may choose termination and Employee will then receive the guaranteed salary, benefits and severance."

Andrew made the choice as outlined in Exhibit 3 by tendering his letter dated February 6, 2019, a copy of which is Amended Complaint Exhibit 2.  This action was taken prior to CenterPoint notifying Andrew of its attempt to unilaterally modify the Merger Plan and changing the benefits as promised by the Merger Plan parties at numerous times and in numerous ways.

These proceedings are prior to any answer by Defendant.  As cited in prior Memorandum (Docket 24),  all disputed facts should be presumed in favor of Plaintiff.  In their Opposition To Motion For Leave To Amend (Docket No. 30) and other responses and replies Defendants state as facts many disputed or inaccurate facts that should be resolved in favor of Plaintiff, the non moving party.

A layman's, employee's, or shareholder's interpretation of Defendants' position could be as follows:

A big corporation, in fact a public utility company, can promise anything to get its way and then once accomplished break its promises that others relied on to their detriment and without a hearing those relying on broken promises are out of luck.

Respectfully submitted,

/S/ _____

*Ronald J. Freson  6988-82*
Attorney at Law

20 NW Third Street, Suite 1240
Evansville, IN  47708
Telephone:  (812) 424-3593
Fax: NO FAX
Email:       ron@fresonlaw.com
ATTORNEY FOR PLAINTIFF
ANDREW J. FRESON


**CERTIFICATE OF E-SERVICE AND COMPLIANCE**

I, Ronald J. Freson, certify that (i) this **FIRST MEMORANDUM OF PLAINTIFF ANDREW J. FRESON IN OPPOSITION TO DEFENDANTS CENTERPOINT ENERGY, INC., AND VECTREN CORPORATIONS' MOTION TO DISMISS PLAINTIFF ANDREW J. FRESON'S AMENDED COMPLAINT AND MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR MOTION**   was tendered for E-Filing with the Clerk of the United States District  Court, Evansville Division, on the 28th day of February, 2020; (ii) Service was arranged to be made on the parties, by Certified Mail; and, (iii) the forgoing document complies with Trial Rule 5(G) with regard to information excluded from the public record under Administrative Rule 9(G).  This is a CV case type as defined in administrative Rule 8(B)(3).

I, Ronald J. Freson, further certify that my contact information listed on the Indiana Supreme Court Roll of Attorneys is current and accurate as of the date of this filing; acknowledge that orders, opinions, and notices, and all documents served under Trial Rule 86(G) will be sent to my email address listed on the Roll of Attorneys; and further acknowledge that I am solely responsible for keeping my Roll of Attorneys contact information accurate per Ind. Admis. Disc. R. 2(A). The following are those who are currently on the list to receive e-mail notices for this case:


**Reed S. Schmitt**
**BINGHAM GREENEBAUM DOLL LLP**
One Main Street, Suite 600
Evansville, IN 47708


**Robert G. Lian, Jr.**
**Akin Gump Strauss Hauer & Feld LLP**
2001 K Street, N.W.
Washington, DC 20006


**Trisha S. Dudlo**
BINGHAM GREENEBAUM DOLL  LLP (Evansville)


Page 35 of  36

One Main Street, Suite 600
Evansville, IN 47708
tdudlo@bgdlegal.com,sfullerton@bgdlegal.com

/S/ RONALD J. FRESON

*Ronald J. Freson  6988-82*